PRAIRIE PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee, v. HENRI J. BIANUCCI *et al.*, Defendants-Appellants.

Fourth District No. 4—92—0201

Opinion filed September 24, 1992.—Supplemental opinion filed on denial of rehearing October 14, 1992.

Phillip R. Lamkin, of Lamkin & Lamkin, P.C., and Ray Moss, of Ray Moss & Associates, both of Clinton, for appellants.

Tietz & Richardson, of Decatur (Jeffrey D. Richardson, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

■ Section 12—101 of the Code of Civil Procedure (Code) states that "[a] judgment is not a lien on real estate for longer than 7 years from the time it is entered or *revived*" (emphasis added) (Ill. Rev. Stat. 1989, ch. 110, par. 12—101). At common law, the method for reviving judgments was through a proceeding in *scire facias* (see *Smith v. Carlson* (1956), 8 Ill. 2d 74, 132 N.E.2d 513). Section 2—1601 of the Code abolished that procedure and states that relief formerly obtained in such a proceeding may be granted through "a petition filed in the case in which the original judgment was entered." Ill. Rev. Stat. 1989, ch. 110, par. 2—1601.

This case involves a proceeding on a motion to revive a judgment brought by a judgment creditor against judgment debtors who had been discharged in bankruptcy after the lien of the judgment had attached to defendants' residential property. That property was later abandoned by the bankruptcy trustee. The principal questions are (1) whether a motion to revive a judgment ever lies after the judgment debtors have, subsequent to the judgment, been discharged in bankruptcy; (2) if the motion is permissible, what issues are to be considered; and (3) whether, in any event, the judgment lien involved here was defeated or rendered void by the laws of bankruptcy or State property laws. We hold: (1) such a motion does lie where the lien of the judgment is preserved; (2) the issues presented on the motion are somewhat limited but included consideration of the enforceability of the judgment lien involved, *i.e.*, whether execution can be obtained thereon; and (3) under the facts alleged here, State laws did not defeat or void the judgment lien. We defer to a proceeding in the Federal courts to first determine the operation of bankruptcy law upon plaintiff's judgment lien.

On December 10, 1984, plaintiff Prairie Production Credit Association (PCA) obtained a judgment by confession on a note against defendants Henri J. and Barbara J. Bianucci in the circuit court of De Witt County. The judgment was in the sum of $67,864.14 plus costs which included a $1,400 attorney fee. Ten days thereafter, on December 20, 1984, defendants filed a voluntary bankruptcy petition in the United States District Court for the Central District of Illinois, and on October 28, 1985, they were discharged from the bankruptcy. On September 19, 1991, proceeding pursuant to section 2—1601 of the Code, plaintiff filed a motion in the case in which the judgment was entered seeking to revive the December 10, 1984, judgment.

Defendants filed a response to plaintiff's motion to revive the judgment. They contended (1) the stated amount of the judgment was inaccurate; (2) various payments further reduced the amount owed; (3) an unsecured claim filed in the bankruptcy by plaintiff had been allowed; (4) all of defendants' real estate had been liquidated in the bankruptcy except for the residential property; (5) at the time of the bankruptcy, no equity existed in the residential property over and above (a) the amount due on a mortgage which was prior to plaintiff's judgment, (b) the lien for taxes, and (c) defendants' homestead exemption. The response also stated that the residential premises had been sold.

The response was supported by the affidavit of the trustee in bankruptcy, who stated he had abandoned the residential property, and at the time of the bankruptcy, that property had no value "exceeding the enforceable encumbrances and the homestead exemption." In regard to the latter statement, the affidavit differed from the response in that the response stated the residential property had no value after considering various liens prior to plaintiff's lien while the affidavit said that the lack of equity existed after considering all "enforceable encumbrances," which could have included plaintiff's judgment lien.

A hearing was held at which no evidence was introduced. The circuit court concluded it could not properly consider the potential enforceability of the judgment sought to be revived in determining whether to allow revival. On February 11, 1992, the circuit court entered an order which found the judgment was "still in force and effect, [had] not [been] reversed or set aside and [had] not been paid by defendants." The court then ordered the judgment revived and ordered execution to issue.

Defendants have appealed, contending, as we have indicated, that (1) their discharge in bankruptcy was, of itself, sufficient to prohibit the circuit court from reviving the judgment; (2) even if the judgment could be revived on an *in rem* basis in order to enforce the lien of the judgment, the court erred in refusing to consider the enforceability of the judgment lien; and (3) the laws of bankruptcy and Illinois property law rendered the judgment lien unenforceable.

Plaintiff agrees that defendants' discharge in bankruptcy discharged them from any personal liability on the judgment but contends that the existence of a judgment lien against defendants' residential real estate permitted the court to revive the judgment as far as the lien was concerned. Plaintiff maintains the court correctly refused to consider the enforceability of the judgment lien and con-

tends that, in any event, the question of the validity of the lien under bankruptcy law should not be considered, because defendants have attempted to open up the bankruptcy proceedings to get the bankruptcy court to consider the validity of the lien. Although the bankruptcy court has refused to reopen the proceeding, plaintiff maintains that since that order is still subject to the Federal appeals process, neither the trial court nor this court should consider that matter.

In support of their position that the discharge in bankruptcy prevents any revival of the pre-bankruptcy judgment, defendants rely upon *Trustees of Schools of Township No. 20, Range No. 5 v. Chamberlain* (1948), 334 Ill. App. 83, 78 N.E.2d 525, and *Martinez v. Cogan* (1943), 320 Ill. App. 468, 51 N.E.2d 595. Neither case gives strong support to defendants' theory. Rather, we conclude the proper rule is that set forth in *Farmers State Bank v. Hansen* (1990), 196 Ill. App. 3d 295, 553 N.E.2d 751, *Rochelle State Bank v. Gavic* (1979), 70 Ill. App. 3d 42, 388 N.E.2d 436, and *Avco Finance Co. v. Erickson* (1971), 132 Ill. App. 2d 868, 270 N.E.2d 111.

In *Chamberlain*, a suit was brought to revive a judgment against joint judgment debtors, one of whom had been discharged in bankruptcy. The circuit court revived the judgment only against the non-bankrupt defendant. The latter appealed contending that the court erred in not also entering a judgment of revival against the bankrupt. The appellate court affirmed, holding: (1) under bankruptcy law one joint debtor was liable for the whole debt when the other goes bankrupt; and (2) whether the judgment of revival was in error because the judgment was not revived as to the bankrupt with a stay against enforcement as to the bankrupt did not need to be decided as the bankrupt was not complaining. The *Chamberlain* court did indicate that little good would have resulted from reviving a judgment against both defendants accompanied by a perpetual injunction prohibiting enforcement against the debtor discharged in bankruptcy.

In *Martinez*, the circuit court struck a motion for revival of a judgment against two judgment debtors who had been discharged in bankruptcy subsequent to entry of the judgment. The appellate court affirmed, noting that the judgment creditors' contention that liens arising from the judgment might not have been discharged by the bankruptcy was raised for the first time on appeal and would not be considered.

In *Hansen*, the circuit court entered an order of revival in regard to a judgment against a judgment debtor subsequently discharged in bankruptcy. The order of revival stated it was an *in rem* order reviving the lien of the judgment to be enforceable only against real estate

owned by the judgment debtors at the time of their bankruptcy. The record showed that all real estate of the bankrupts had been abandoned by the trustee. The appellate court affirmed, noting that a discharge in bankruptcy does not necessarily release liens against property owned by the bankrupt (citing *Gavic*), and the revival of the judgment was merely a continuation of the previous judgment and not a new judgment.

In *Gavic*, the following chain of events occurred. On May 20, 1974, a judgment by confession on a promissory note was obtained by that plaintiff against that defendant and memorandum of that judgment was filed with the recorder of deeds in the county where that defendant's real estate was located on May 24, 1974. On July 1, 1974, that plaintiff filed a voluntary petition in bankruptcy in a Federal district court listing the debt of the note as an unsecured debt. The petition in bankruptcy did not list the confessed judgment as a lien. On September 25, 1974, that defendant was discharged in bankruptcy, and his residential real estate was determined to be exempt and set apart to him.

On April 11, 1977, the *Gavic* defendant filed a motion in the circuit court to set aside the judgment by confession on the basis that the underlying debt had been discharged in bankruptcy. The circuit court opened the judgment by confession and held the underlying debt had been discharged in the bankruptcy. That court then entered an order releasing the lien of the judgment.

On appeal in *Gavic*, the appellate court reversed and remanded with directions to restore the lien of the judgment by confession. The court held that the general rule that a discharge in bankruptcy is personal to the bankrupt and does not release against the property of the bankrupt controlled. *Avco Finance Co.*, 1A Collier on Bankruptcy §17.29 (14th ed. 1978), and 9 Am. Jur. 2d *Bankruptcy* §753 (1963), were cited in support of the decision. In *Avco Finance Co.*, a suit for conversion was held to lie to recover a chattel upon which the plaintiff had a lien to secure a note, even though the owner-debtor on the note had been discharged in bankruptcy. No bankruptcy trustee or other court official had ever taken possession of the chattel.

Here, the existence of defendants' discharge in bankruptcy did not prevent the circuit court from entering an order of revival, but even if revival was otherwise permitted, the court was in error in not limiting the revival to operating *in rem* only. Under the language of the February 11, 1991, order of revival on appeal, a strong argument could be made that the revived judgment created personal liability.

▆ The circuit court's determination that it could not consider the enforceability of the judgment lien at the hearing on the motion to revive was based on the decision in *Bank of Eau Claire v. Reed* (1908), 232 Ill. 238, 241, 83 N.E. 820, 821, where the court stated that "[t]he judgment under a *scire facias* to revive a judgment is not *quod recuperet* [(one granting a right to recover)] for the amount due, but its object is to revive the judgment *just as it formerly existed and to reinvest it with the same attributes and conditions which originally belonged to it.*" (Emphasis added.) The major thrust of the decision was set forth in the following language:

> "The only question to be determined in a proceeding by *scire facias* to revive a judgment is *whether the plaintiff has a right, as against the defendant, to have the judgment executed.* That rule was stated in *Smith v. Stevens*, 133 Ill. 183[, 24 N.E. 511], and in connection with the rule the court quoted from *Dowling v. McGregor*, 91 Pa. St. 410, as follows: 'The only defense in the trial of the *scire facias* on a judgment is a denial of the existence of the judgment or proof of a subsequent satisfaction or discharge thereof.' The defenses available, and which go to the plaintiff's right, as against the defendant, to have the judgment executed, are, that there is no such record, or that the judgment has been paid or released, or there has been an accord and satisfaction." (Emphasis added.) (*Bank of Eau Claire*, 232 Ill. at 240, 83 N.E. at 821.)

The *Bank of Eau Claire* defendant attempted to raise the issue that, contrary to the record, he was never served with process before judgment was entered, but the supreme court agreed that the circuit court properly refused to permit him to collaterally attack the underlying judgment.

▆ More recently, in *J.D. Court, Inc. v. Investors Unlimited, Inc.* (1980), 81 Ill. App. 3d 131, 400 N.E.2d 1083, this court agreed with the general concept that the scope of a proceeding to revive a judgment was narrow. However, as the *Bank of Eau Claire* court indicated, the underlying question involved in a proceeding of this nature is whether the plaintiff has a right against a defendant to have execution on the judgment sought to be revived. Here, at most, that execution could have been obtained only against the real estate abandoned by the trustee. Plaintiff does not dispute that defendants' discharge in bankruptcy would have prevented full revival of the judgment here even if that discharge is shown by introduction of information outside the record. If that is so, logic requires that in a proceeding to revive the *in rem* effect of a judgment arising from the existence of one or

more liens, the question of the discharge of those liens must be considered even if information outside the record is required to do so. The trial court should have considered defendants' assertion that the lien of the underlying judgment on the abandoned residential property had been discharged. Under the format of the pleadings here, upon defendants' showing of a valid discharge in bankruptcy, the burden of proof was on plaintiff to show the existence of a valid lien to support the *in rem* revival sought.

The defendants maintained no such valid lien existed. The basis of their theory is that under both bankruptcy law and State law, no lien existed in the residential property because, at the time of the bankruptcy decree, plaintiff's judgment lien was inferior to a mortgage on the premises, a lien against those premises for real estate taxes, and defendants' combined homestead exemptions of $15,000, and the value of the property was less than the amount of those prior items. They contend that plaintiff's judgment lien is destroyed under these circumstances. Defendants' response to plaintiff's motion indicated this situation existed while the affidavit in support of the motion only set forth that when plaintiff's encumbrance was included, the value of the encumbrances against the residential property equaled or exceeded the value of the property.

One aspect of defendants' foregoing contentions arises from the following provisions of section 506 of title 11 of the United States Code (11 U.S.C. §506 (1988)) (hereinafter Bankruptcy Code). Section 506(a) of the Bankruptcy Code states:

> "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." (11 U.S.C. §506(a) (1988).)

Section 506(d) of the Bankruptcy Code states:

> "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

11 U.S.C. §506(d) (1988).

Defendants maintain that under section 506(a) of the Bankruptcy Code, plaintiff's judgment is a secured claim only to the extent of the value of the bankrupt estate's interest in the residential property—which is zero—and that, therefore, plaintiff's lien is not a secured claim and is thus void under section 506(d) of the Bankruptcy Code.

An interpretation of those statutory provisions was given by the United States Supreme Court recently in *Dewsnup v. Timm* (1992), 502 U.S. 410, 116 L. Ed. 2d 903, 112 S. Ct. 773. The situation there was very similar to the situation of the lien claimed by plaintiff, except that there, the plaintiff's lien was a bargained-for mortgage and not a judicial lien, and the issue arose before a bankruptcy court rather than in a proceeding to revive a judgment. The lower tribunals had determined that because the liened properties there were abandoned by the trustee, and the bankruptcy estate had no interest in the mortgaged property, the provisions of sections 506(a) and (d) of the Bankruptcy Code were not applicable.

The *Dewsnup* Court did not discuss the effect of abandonment. Rather, that Court concluded that the language of section 506 of the Bankruptcy Code was sufficiently ambiguous that the Court could not determine the enacting Congress intended to depart from the rule that liens pass through bankruptcy in full force and little precedent existed for reducing the secured indebtedness to the value of the property. As the *Dewsnup* Court emphasized that the lien being protected there was a mortgage concerning which the parties had negotiated, uncertainty exists as to whether a judicial lien such as that here would be treated under section 506 of the Bankruptcy Code in the same manner as that mortgage.

As has been stated, defendants have presented a motion to the bankruptcy court seeking to reopen the proceedings to have plaintiff's judgment lien declared void pursuant to sections 506(a) and (d) of the Bankruptcy Code and set aside for other reasons. The bankruptcy court denied the relief, and appeal has been taken. The question of the operation of section 506 of the Bankruptcy Code is technical and complicated. We deem the appropriate position to take on this issue is to defer to the Federal courts.

■■ ■ Accordingly, we will direct that, on remand, the circuit court refrain from ruling on the motion to revive the judgment until a final determination has been made on the issue defendants seek to have the Federal courts decide. If the Federal courts uphold the bankruptcy court's refusal to reopen the case, the circuit court will then have to decide that issue. Notably, section 506(d) of the Bankruptcy Code speaks in terms of the lien involved being "void" where the lien secures a claim which is not an allowed claim. Since a "void" instrument created by a judgment can be attacked at any time, the circuit court would not exceed its jurisdiction if it should eventually declare the lien void, thus eliminating any basis for revival of the judgment.

We then move to defendants' assertion that under Illinois law plaintiff's lien has been destroyed under the allegations of defendants' response. They rely upon the reasoning of the Second District Appellate Court in *Cochran v. Cutler* (1976), 39 Ill. App. 3d 602, 350 N.E.2d 59. The opinion in that case recognized a rule that when a party holds a lien on property subject to a homestead exemption, and that property is sold by the owner having the homestead exemption, that lien is destroyed if the value of the property on the day of sale is not sufficient to cover the sum of the value of all prior liens and the homestead exemption. The stated purpose of the rule is to protect the homesteader's interest in the property. After setting forth the forgoing rules, the *Cochran* court then determined that some equity existed beyond the homesteader's exemption and held the rule stated above was not appropriate to that case.

The *Cochran* court spoke of a rule somewhat similar to that in section 506(d) of the Bankruptcy Code. However, that rule does not operate unless a homestead interest is involved and until the homestead interest is, in effect, being sold. Moreover, the value of the property subject to the lien which is being sold is determined at the time of sale and not before. Although defendants allege in their response that the residential premises have been sold, they make no other allegation which would bring the rule set forth in *Cochran* into play.

Accordingly, we reverse the order of revival and remand the cause to the circuit court of De Witt County. That court shall forbear until the proceeding in the Federal courts concerning defendants' request for relief is finally determined. The circuit court shall then determine the validity of plaintiff's judgment lien. If the Federal courts have resolved the question of whether plaintiff's judgment lien remained in force, the circuit court shall follow that determination in ruling on the validity of plaintiff's lien. If the Federal courts do not resolve that

question in that proceeding, the circuit court must then make that decision. Any order of revival found to be appropriate can only have *in rem* effect and must so state.

Reversed, and cause remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE GREEN delivered the opinion of the court:

At the request of plaintiff in its petition for rehearing and upon denial of that petition, we modify that opinion by making the following finding. Pursuant to our power under section 12—104 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 12—104), we find that the period of time between the circuit court's February 11, 1992, order of revival and the final decision of the circuit court acting pursuant to the mandate issued from this decision is and will be a time of restraint within the meaning of section 12—104 of the Code.

STEIGMANN and McCULLOUGH, JJ., concur.