FIRST NATIONAL BANK IN TOLEDO, Plaintiff-Appellant, v. JOHN ADKINS, Defendant-Appellee.

Fourth District  No. 4—94—0808

Argued March 14, 1995.—Opinion filed May 11, 1995.

Ken Gano (argued), of Toledo, for appellant.

John O. Cutright (argued), of Cutright & Cutright Law Office, of Toledo, for appellee.

JUSTICE LUND delivered the opinion of the court:

The First National Bank in Toledo appeals an order of the circuit court of Cumberland County dismissing its petition to revive a judgment obtained against defendant John Adkins in 1987. The basis for the court's decision was that defendant had received a discharge in bankruptcy in February 1991 and plaintiff's petition to revive was not filed until after seven years had elapsed from the date of the judgment. We now reverse this decision.

The operative facts are as follows. On March 24, 1987, plaintiff secured a judgment against defendant for $11,385.14, and a memorandum of that judgment was recorded. On November 13, 1990, defendant filed a voluntary petition in bankruptcy. Plaintiff was listed as a secured creditor. Defendant claimed a homestead exemption in his residential property. The notice of the bankruptcy sent to creditors indicated there were no assets and creditors should not file claims unless notified to do so. The record does not show whether any such notification was made. In its ruling, the trial court indicates that the real estate subject to this controversy was abandoned by the bankruptcy trustee and no claims of creditors were allowed or disallowed.

The parties also indicate (although the record does not show) that the automatic stay in the bankruptcy proceeding was lifted at plaintiff's request on January 3, 1991.

On June 2, 1993, in an apparent attempt to collect on its judgment, plaintiff filed a motion seeking to have the circuit clerk issue a certified copy of the judgment for enforcement purposes. On June 2, 1993, and July 19, 1993, plaintiff filed motions to bring in new parties. These motions sought to bring in the First National Bank of Lerna and First Federal Savings & Loan Association in Mattoon, which had mortgages on real estate owned by defendant, to determine the relative priorities of their liens. Both these institutions moved to quash the summonses issued to them on grounds that until an execution issues and a levy is made, any attempt to join them as parties was premature. These motions were granted, and plaintiff's motions to bring in new parties were dismissed. The clerk was ordered to issue a certified copy of the judgment. Plaintiff filed a petition to revive the judgment on May 27, 1994. Defendant filed a response in which he raised the defense of discharge in bankruptcy and stated that the lien of plaintiff's judgment had expired. He also alleged that the revival proceeding was in violation of the injunction issued by the Federal bankruptcy court.

■ At the hearing on plaintiff's petition, arguments of counsel were heard. In addition, defendant testified that his property was worth approximately $32,000 in November 1990 and that the balance on the first mortgage was about $29,800. He also stated taxes owing on the property when he filed his bankruptcy petition were $323.74. He also claimed his homestead exemption in the bankruptcy proceeding. He asked the court to determine the value of the property, deduct the first mortgage, taxes, and homestead exemption and find that there was no equity for plaintiff's lien to attach to. The trial court issued a letter ruling on August 22, 1994, in which it dismissed the petition to revive judgment as having been filed too late. The court stated there were two issues to decide: (1) whether revival *in rem* can be sought after the seven-year period has expired where there is no personal liability on the debtor; and (2) whether a lien exists in the first place if, after the memorandum of judgment is filed, the debtor files a bankruptcy petition and the property to which the lien attaches is not worth more than the value of all liens and exemptions that are prior to the judgment lien. The court answered the second question first, finding the judgment lien did survive the bankruptcy and that defendant could not avoid the lien by reason of the fact there might be no equity in the real estate beyond the amount of prior liens and his homestead exemption. As to the question of

whether the petition to revive was filed too late, the court found as follows:

> "I find that revival in rem can be sought while the judgment is still enforcible [*sic*]. If the Petition to Revive is filed, for example, before the end of the first seven years, revival can occur. However, if the Petition to Revive is filed after the expiration of the seven years, the judgment lien has expired when the petition is filed. No enforceable lien then exists on the property. A title examiner can ignore the memo in reviewing title problems related to the property. Since the judgment had expired when the Petition to Revive was filed and no personal liability still remained, there is nothing to revive even for in rem effect only. The plaintiff had no right to proceed to enforce the judgment when the Petition to Revive was filed even limiting enforcement to in rem effect. Therefore, the Petition to Revive is dismissed because it was filed more than seven years from the entry of the original judgment."

Plaintiff filed its notice of appeal on September 9, 1994. We note the following relevant provisions of the Code of Civil Procedure (Code) (735 ILCS 5/1—101 *et seq.* (West 1992)). Section 12—101 of the Code (735 ILCS 5/12—101 (West 1992)) provides: "A judgment is not a lien on real estate for longer than 7 years from the time it is entered or revived." Section 12—108(a) of the Code (735 ILCS 5/12—108(a) (West 1992)) states:

> "(a) Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2—1601 of this Act; but real estate, levied upon within the 7 years, may be sold to enforce the judgment at any time within one year after the expiration of the 7 years."

Section 13—218 of the Code (735 ILCS 5/13—218 (West 1992)) states:

> "Judgments in a circuit court may be revived as provided by Section 2—1601 of this Act, within 20 years next after the date of such judgment and not after; and the provisions of Section 13—217 of this Act shall apply also to this Section."

This is a case of first impression. The sole issue confronting us in this appeal is whether a judgment may be revived after the seven-year period of enforceability has expired, when an intervening bankruptcy has discharged personal liability of the debtor. Cases have held that revival may take place in this situation where the revival proceeding is brought within the seven-year period. For example, in *Farmers State Bank v. Hansen* (1990), 196 Ill. App. 3d 295, 553 N.E.2d 751, a judgment was entered against defendants in 1982. Subsequently, they filed a chapter 7 proceeding in bankruptcy and received a discharge. All their real estate was abandoned by the bankruptcy

trustee. Prior to the expiration of seven years from the entry of the judgment, plaintiff filed a petition to revive the judgment, and an order of revival was entered by the trial court within that period. The revival was limited to *in rem* effect and only as to real estate owned by defendants at the time they filed their bankruptcy proceeding. On appeal, the appellate court affirmed, noting that the revival was accomplished within the seven-year period of enforceability. In response to defendants' argument that their bankruptcy discharge prevented revival, the court noted the general rule that a discharge in bankruptcy is personal to the debtor and does not act to release liens or security interests in the debtor's property. The revival of a judgment is not the creation of a new judgment, but rather a continuation of the judgment revived. *Hansen*, 196 Ill. App. 3d at 297, 553 N.E.2d at 752-53.

A decision of this court, *Prairie Production Credit Association v. Bianucci* (1992), 234 Ill. App. 3d 1072, 600 N.E.2d 523, also made a similar holding, although the significance of the timing of the revival proceeding was not discussed. There, a judgment creditor sought revival of a judgment against debtors who, subsequent to the entry of the original judgment, received a discharge in bankruptcy. The revival proceeding was brought within seven years of the rendition of the judgment. The trial court ordered the judgment revived. On appeal, one of the issues raised by the debtors was that their bankruptcy alone was sufficient to prohibit the trial court from reviving the judgment. This court held that the judgment could properly be revived despite the bankruptcy, but that the trial court had erred in not specifically limiting the effect of the revival to *in rem* operation only. In its holding, the court relied upon cases which followed the general rule that a discharge in bankruptcy is personal to the debtor and does not release liens against the property of the debtor. *Bianucci*, 234 Ill. App. 3d at 1077, 600 N.E.2d at 526.

■ Defendant maintains that the sole characteristic which distinguishes this case from those previously cited is that plaintiff waited until after seven years had elapsed from the entry of the judgment before it sought revival. Defendant's reasoning is that once the seven years had passed, the lien of the judgment had expired and he had no personal liability because of his discharge in bankruptcy. However, this reasoning is flawed; the timing of the revival is irrelevant to the central question before us. The debtor's lack of personal liability after a bankruptcy discharge is the same, regardless of whether revival is accomplished during, or after, the seven-year period. In either case, the judgment may not be collected personally from the debtor. As already noted, this does not affect a preexisting lien on the debtor's

property. (See also *Rochelle State Bank v. Gavic* (1979), 70 Ill. App. 3d 42, 43, 388 N.E.2d 436, 437-38; *Avco Finance Co. v. Erickson* (1971), 132 Ill. App. 2d 868, 870, 270 N.E.2d 111, 112.) There is nothing in the statute or case law requiring that a petition to revive a judgment be filed, or the judgment itself be revived, prior to expiration of the then existing seven-year period in which the judgment lien may still be enforced. Pursuant to section 13—218 of the Code, a judgment may be revived within 20 years after it was entered. Although a judgment creditor's lien may lose its priority if not renewed at the time it expires, that risk is for the creditor to take.

In *First National Bank v. Loffelmacher* (1992), 236 Ill. App. 3d 690, 603 N.E.2d 80, plaintiff sought to revive a judgment against defendants after expiration of the seven-year period of enforceability. In the trial court, defendants argued the judgment could not be revived for this reason. The trial court entered summary judgment for plaintiff, reviving the judgment. On appeal, defendants renewed their argument. The appellate court rejected it, stating:

> "[W]e believe that defendants' interpretation of section 12—108, that revival must occur within seven years of the original judgment, would render both the stated exception to section 12—108 and all of section 13—218 meaningless. Section 12—108 addresses limitations on *enforcement* of judgments and states that 'no judgment shall be *enforced* after the expiration of 7 years from the time the same is rendered, *except* upon the revival of the same.' (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 12—108.) Section 13—218, on the other hand, specifically addresses the *revival* [(emphasis in original)] of such judgments and provides for a 20-year limitation period. Since under section 12—108 it is clearly permissible to execute or enforce a judgment within seven years from the time it was originally rendered, it would make no sense to say, in the same breath, that the exception, *i.e.*, revival, must also take place within the same seven-year period. If actual enforcement may occur up until the expiration of the seven-year period, there is no concomitant need for revival during that period.
>
> With these considerations in mind, we conclude that a party may not enforce a judgment after the expiration of seven years from the time that judgment was rendered unless the judgment is subsequently revived. (Ill. Rev. Stat. 1989, ch. 110, par. 12—108.) Thereafter, the judgment may be revived so long as the revival action is initiated within 20 years from the date judgment was originally rendered. (Ill. Rev. Stat. 1989, ch. 110, par. 13—218.)" *Loffelmacher*, 236 Ill. App. 3d at 695, 603 N.E.2d at 83-84.

Although the *Loffelmacher* case did not involve an intervening bankruptcy, the principles set forth there are sound. We hold that they apply regardless of the existence of a bankruptcy proceeding and resultant discharge of personal liability. Defendant argues that the trial court's decision should be upheld because to do otherwise would brand him with a "scarlet letter," by holding plaintiff's lien over his head for up to 20 years, despite his attempt to gain a fresh start through his bankruptcy. He notes that the judgment lien applies to all real estate he owns, even to that which he may acquire in the future. However, a trial court may avoid this effect, after a discharge in bankruptcy, by giving the lien *in rem* effect only as to real estate owned by the debtor at the time of the bankruptcy, as was done in the *Hansen* case. In any event, deciding questions of social policy is not the province of this court; such concerns are properly addressed to the General Assembly.

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

GREEN and STEIGMANN, JJ., concur.